# WESTERN UNION TELEGRAPH CO. V. THE STATE OF TEXAS.

## IN SUPREME COURT, TYLER TERM, 1884.

*Taxation.*—Every tax law must fix with certainty the thing to be taxed, the rate and amount of the tax, or the means for ascertaining the latter without resort to an action at law.

*Same—Constitutional Law.*—The tax law of 1879 having been held unconstitutional in so far as it sought to tax inter-state and govermental telegraph messages, is held invalid as to messages within the state, because it does not provide a method for ascertaining the amount of the tax.

Appeal from Travis county.

The nature of this action and the several steps taken therein are thus correctly stated in brief for appellant :

" This suit was begun August 28, 1880, in the district court of Travis county, by the State of Texas, for the purpose of recovering from the Western Union telegraphic company  the taxes (one cent for each full rate, and one-half cent for each less than full rate message sent over appellant's lines in Texas) fixed by articles 4665 of the revised statutes of Texas, for the quarters beginning Octobor 1, 1879, and ending June 30, 1880.

The company defended on the ground that some of the messages so sent and sought to be taxed were messages from points in Texas to points in the United States, and  territories of the United States, outside of Texas, and relating to commerce between the states; and others were messages from and to the different department agencies and offices of the United States, and  concerned  the business and governmental affairs of the United States ; and that the law creating said tax was void under the constitution and laws of the United States and the constitution of Texas.

The court held  the tax valid, and rendered judgment  against the company, March 10, 1881, for the tax on the entire number  of messages sent, and for the interest from January 1, after  the dates at which the taxes should, by the statute, have  been paid.   The company appealed from that judgment to this court, where, [at the Austin term, 1881, (W. U. Tel. Co. v. State, 55 Tex., 314) the judgment of the district court of Travis county was affirmed as to the validity

of the tax, but reversed as to the interest allowed. The company then took the case, by writ of error, to the supreme court, where (W. U. Tel. Co. v. State of Texas, 105 U. S. 460) the judgment of the supreme court of Texas was reversed and the cause remanded, the statute of Texas (R. S. art. 4665) under which the tax was sought to be recovered being held void, in so far as the same applied to or was sought to be enforced against inter-state and governmen-' tal messages; the question as to whether the statute remained enforceable as against other messages being relegated to the courts of Texas. The case having been in turn remanded to the district court of Travis county, the state, by supplemental petition, set up that not more than a stated per cent of the whole number of messages sent during said quarters were gevernmental messages, and that of the remainder about a stated per cent were sent from points to points wholly in Texas, and asked judgment for the tax on the messages other than governmental messages, sent from points to points in Texax.

The defendant filed demurrers and general denial. The case was tried before the court without jury July 4, 1883, and judgment rendered for the tax according to R. S. art 4665, (p. 676), on the numbers of messages estimated by the court from the evidence—to have been sent during the time sued for—wholly within Texas, and not governmental messages. Amount of tax adjudged, $1196.82. The defendant again appealed, and brings the case up for revision.

The court below files findings of fact and conclusions of law. The record also contains a statement of facts.

FINDINGS OF FACTS.

1. The defendant was an incorporated and chartered telegraph company, doing business in the State of Texas from the first day of October, 1879, continuously, to the first day of July, 1880, during said term sending and receiving telegraphic dispatches as a business. Its lines extended along the railroads of Texas and into and through nearly all the States of the Union, and to Washington City, D. C.

2. That during the months of October, November and December, 1879, said company sent 69,593 full rate messages, and 45,646 half rate messages in the State, and that during the months of Jan-

uary, February, March, April, May and June, 1880 it sent 99,483 full rate, and 53,762 half rate messages.

3. That said company has an officer and resident agent or employee, residing and on duty in his employ, for defendant, in Travis county, Texas.

4. That the defendant is chargable for $2197.80 taxes under Art. 4665, Revised Statutes (p. 676), as occupation taxes for and during the said time from October 1, 1879, to July 1, 1880.

5. It also appeared from the testimony that the number of messages above stated, included all messages sent from Western Union telegraph offices within Texas, to all other points in the United States, both within and out of the State of Texas ; also messages sent from the government officers, agents of the United States in Texas to other officers, agents for departments of said United States government ; also all messages sent over Western Union line from points in Texas relative to commerce between Texas and other States of the Union during the time stated. A large proportion of the messages sent belong to the classes here enumerated.

6. The defendant company has about 125 offices in Texas. The number of messages sent over Western Union line without the state was not shown, nor the amount sent by the United States government, its agents or employees, nor those relating to commerce during the time.

7. The court also certified the following additional facts to those found on former trial :

(1). · That 99,754 full rate, and 42,591 half rate messages were sent (to points within the State of Texas) by defendant from October 1, 1879, to July 1, 1880 and that during said time 1607 United States government messages were sent. These last estimated as proportionally divided between the whole and half rate messages.

(2). Estimating the tax upon this basis at the rate fixed by the statute, there is found due as follows :

On full rate messages............................................$ 997 54
On half rate messages............................................ 212 95

$1210 49
Deduct on the United States government work............ 13 67

$1196 82

On this finding of facts the court below entered judgment in favor of the state for $1196.82.

The act under which the tax is claimed in this case, is as follows :

"From every chartered telegraph company doing business within this state, there shall be collected one cent for every full rate message, and one-half that for every message less than a full rate message sent ; this tax to be paid quarterly to the comptroller on the sworn statement of the chief manager of said company or companies, who shall keep a record of such messages, and the receipt of the comptroller under seal, shall be issued to said company or companies, certified copies of which shall be evidence of the pay ment of the State tax, *provided*, railroad messages for running their trains and for company use shall not be taxed; *provided further*, that nothing herein contained shall authorize the levy or collection of any county or municipal tax upon any such chartered company for messages sent."

It is urged, that as this law has been held unconstitutional in so far as it applies to messages sent beyond the state, and as to messages sent in the transaction of the business of the general government, it ceases to be operative as a tax law, for any purpose, for the reason that, as it now stands, it does not provide a mode for the assessment, or ascertainment of the amount of tax which may legally be subject to its provisions.

It does not necessarily follow, because a statute is void in part, that it is void *in toto* for some of its provisions not liable to any constitutional objection may be separate and distinct from the parts which are void, and so complete within themselves, and so clearly evidencing the legislatures intention in reference to the subjects to which they relate, that they may stand without reference to the parts which are void.

The rule is thus well stated : "Where, therefore, a part of a statute is unconstitutional, that part does not authorize the courts to declare the remainder void also, unless all the provisions are con- nected in subject matter, dependent on each other, operating to- gether for the same purpose, or otherwise so connected together in meaning that it can not be presumed, the legislature would have passed the one without the other.

The constitutional and unconstitutional provisions may even be

contained in the same section, and yet be perfectly distinct and seperable, so that the first may stand, though the last fall.

The point is not whether they are contained in the same section for the distribution into sections is purely artificial; but whether they are essentially and inseparably connected in substance. If, when the unconstitutional portion is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must stand. (Cooley Con. Lim. 215.)

Tested by this rule, how does the statute in question stand, shorn of application to *all* classes of messages, which may be sent by telegraph companies?

The purpose of the act was to impose a tax upon telegraph companies in amount to be determined by the entire number of messages which the particular company sought in the given case, to be charged, had transmitted, and to make the accomplishment of this purpose practicable to provide a means by which the entire amount of taxable business done might be ascertained. In other words, to impose the tax, and at the same time provide the manner in which its amount in a given case could be ascertained; and it cannot be presumed that the legislature would have imposed the tax, it not being a specific tax on occupation, without having at the same time provided a means of ascertaining with certainty the sum to be paid, otherwise than by an action at law; for to leave the amount to be paid, to be ascertained by an action at law, would be utterly subversive of all the recognized rules applicable to taxation.

When taxes have been properly decided upon, an assessment may become an indispensible proceeding, in the establishment of any individual charge against either person or property,

This is always requisite when taxes are to be levied in proportion to an estimate, either of values or benefits, or the results of business. (Cooley on Taxation 258.)

In the law under consideration the amount to be paid was to be determined by the sworn statement of the chief manager of a company of the entire number of full rate, and less than full rate messages sent within the given time. This we deem a reasonable and proper method of determining the sum to be paid, a method of which no company could complain, and it is probably true, if a company had failed to cause the proper report of business done, to be

made that the state would not be powerless to have it ascertained, and enforce its payment.

It was then the intention of the state, that the amount of taxes to be paid should be ascertained in the manner provided by the act, and it cannot be presumed that it was the intention to impose the tax, and have its amount in a given case ascertatned in some other way, when there had been no failure on the part of the person to be taxed to do all that the law required him to do, to have it ascertained in a manner necessarily oppressive and vexatious to the tax-payer, and unknown to the rules regulating taxation when there has been no default in the tax payer.

It has been determined that certain classes of messages which were embraced in the act under consideration, cannot be legally taxed by the state, and these are, as the law required them to be, embraced in the reports made, but the one class is not, and it seems, cannot now be distinguished from the other, either in the report or from the data kept by the appellant in its office to enable it to make the report which the law requires.

Had the legislature understood that the classes of messages now found to be not subject to taxation, could not be subjected to taxation, then no doubt the taxes on such messages, or business, as may be taxed, would not have been imposed without providing a method by which the business, subject to taxation, could be ascertained. Nor can it be presumed, had the legislature well understood the limit of its taxing power in this class of cases, that it would have imposed the same rate of taxation upon its proper subject, as was attempted to be imposed on the proper and improper subjects combined.

It is of the utmost importance for the protection of the taxpayer, that tax-laws should be certain, both as to the thing taxed and as to the amount of the tax and the manner for its ascertainment, that the taxpayer may have an opportunity without the expense of litigation to pay such taxes as he may owe, and a tax-law which does not accomplish this purpose, ought to be held invalid, whether this results from an attempted exercise of power not possessed through which the law becomes uncertain by both proper and improper subjects being construed and selected for taxation or by the failure of the legislature for any other reason to furnish the rules by which taxes may be levied, assessed and collected.

We are of the opinion that the different parts of the act under consideration are so intimately connected that the invalidity of a part of the law renders the entire law invalid.

This being true, it becomes unnecessary to consider the questions raised as to the admission of testimony further than to say that the admission made by the counsel for the appellee, that it was impossible, from any evidence now to be had, and so, without any neglect of duty by the appellant, to show the actual number of messages sent which could be considered in ascertaining the amount of taxes due if the law was valid in part, well illustrates the wisdom of the rule which requires the tax-law to fix with certainty the thing to be taxed the rate and amount of the tax, or the means for ascertaining the latter. As no action can be maintained on the law relied upon, the judgment of the court below will be reversed and the cause dismissed. Stayton, J.